IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-02892-PAB-SKC

CHOICE INVESTMENT MANAGEMENT, LLC, a Colorado limited liability company,

    Petitioner,

v.

ATEA-BROOKLINE, LLC, a Delaware limited liability company, and
ATEA-BROOKLINE MANAGER, LLC, a Delaware limited liability company,

    Respondents.

---

# ORDER

---

This matter comes before the Court on petitioner's Motion to Vacate Arbitration Award [Docket No. 24] and respondents' Motion to Confirm Final Arbitration Award [Docket No. 16]. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This action arises from a final arbitration award that was granted to respondent on November 11, 2022. Docket No. 16 at 1; Docket No. 24 at 1; Docket No. 24-2 at 5. Petitioner Choice Investment Management, LLC ("Choice") seeks to vacate the award. Docket No. 24. Respondents Atea-Brookline, LLC ("hedge fund") and Atea-Brookline Manager, LLC ("ABM") seek to confirm it. Docket No. 16.

---

[1] The following facts are drawn from the parties' motions, Docket Nos. 16, 24, the parties' Investment Advisory Agreement, Docket No. 24-6, and the arbitrator's awards, Docket Nos. 24-1, 24-2, and are not disputed by either party unless otherwise indicated.

### A.  The Dispute and Arbitration Process

On July 6, 2016, Choice and respondents entered into an Investment Advisory Agreement ("IAA") under which Choice would provide investment advisory services to the hedge fund.[2]  Docket No. 16 at 2; Docket No. 24 at 3; Docket No. 24-6 at 1, ¶ 1. The IAA requires respondents to pay Choice an initial fee of $5,000, which they did upon finalizing the IAA.  Docket No. 16 at 3; Docket No. 24-2 at 1; Docket No. 24-6 at 2, ¶ 8.  The IAA also requires the hedge fund to pay Choice 5% of the fee it pays to ABM when it makes a distribution to investors ("Fee").  Docket No. 16 at 3; Docket No. 24 at 4; Docket No. 24-6 at 2, ¶ 8.  The IAA contains the following arbitration clause:

> Any claim, dispute, or controversy arising out of or relating to: (a) the Account: (b) any transaction executed by, through or with [Choice]; (c) this Agreement, or any other agreement with [Choice]; or (d) any other matter between the [hedge fund] and [Choice], shall be finally and exclusively resolved by arbitration conducted only at the Financial Industry Regulatory Authority ("FINRA") and pursuant to the arbitration procedures of FINRA then in effect (or, in the event FINRA declines the use of its arbitration forum, pursuant to the Commercial Arbitration Rules of the American Arbitration Association).  The arbitration panel shall consist of three individuals who each have substantial knowledge of investment advisory and management services.  Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. This section shall survive termination of this Agreement.

Docket No. 24-6 at 4, ¶ 13.  The hedge fund did not pay Choice the Fee when the hedge fund made a distribution to investors.  Docket No. 16 at 4; Docket No. 24 at 4; Docket No. 25 at 5.  Accordingly, Choice filed an arbitration action claiming that it had not been paid the Fee it was owed under the IAA.  Docket No. 16 at 4; Docket No. 24-1 at 2.  The arbitration matter was heard by David Driscoll, who was appointed as an

---

[2] In the motion to vacate, Choice states that "Respondents needed an investment advisory firm to form a hedge fund."  Docket No. 24 at 2.

arbitrator pursuant to the Commercial Arbitration Rules of the American Arbitration Association[3] ("AAA").  Docket No. 16 at 4; Docket No. 24-1 at 1.  Respondents argued that Choice was barred from making any claim based on the IAA because it had failed to comply with Colo. Rev. Stat. §§ 11-51-403(1) and 11-51-403(2.5).  Docket No. 16 at 4; Docket No. 24-1 at 2.  Respondents also sought reimbursement of the initial $5,000 fee they had paid to Choice.  Docket No. 16 at 4; Docket No. 24-1 at 2.

On September 9, 2022, respondents sought leave to file a dispositive motion to dismiss Choice's claims and to require Choice to reimburse the $5,000 fee.  Docket No. 16 at 4; Docket No. 24-1 at 1.  Choice filed a response in opposition to this request, and respondents replied.  Docket No. 16 at 4; Docket No. 24-19.  The arbitrator held a hearing on the request to file a dispositive motion on September 20, 2022.  Docket No. 16 at 4; Docket No. 24-21.  After oral argument, the arbitrator granted respondents leave to file a dispositive motion.  Docket No. 16 at 4; Docket No. 24-21.  The arbitrator also determined that he would hold Choice's request for leave to file a motion to compel disclosure in abeyance until the dispositive motion was resolved.  Docket No. 24-21.

On September 23, 2022, respondents filed Respondents' Dispositive Motion, which they describe as "akin to a motion for summary judgment," pursuant to Delaware state law.  Docket No. 24-18 at 1, ¶ 1.  The dispositive motion argues that Choice's claims should be dismissed and seeks attorneys' fees and reimbursement of the $5,000 respondents paid to Choice, plus interest.  *Id.* at 2-7, ¶¶ 5-24.  Choice filed a response,

---

[3] The parties do not explain why the arbitration was not conducted at the FINRA or why it was conducted before one arbitrator rather than a panel of three arbitrators, as was specified in the IAA.  *See* Docket No. 24-6 at 4, ¶ 13.  However, Choice does not object to the arbitration award on this ground.

arguing that its claims should not be dismissed, that respondents are not entitled to reimbursement, but stating that it "agrees that [Choice] is entitled to an award of attorneys' fees and costs under Rule 49(d)(ii) [of the AAA Commercial Arbitration Rules] when it prevails at the hearing in this matter." Docket No. 24-4 at 8. Respondents filed a reply in support of their motion on October 3, 2022. Docket No. 16 at 5.

On October 12, 2022, the arbitrator issued an interim award, finding that there were no disputed material facts. Docket No. 24-1. The arbitrator dismissed Choice's claims against respondents and found that Choice was liable to the hedge fund in the amount of $5,000 plus interest, costs, and attorney fees. *Id.* at 3. The arbitrator ordered respondents to submit an interest calculation and itemization of costs and attorneys' fees within ten days of the interim award, giving Choice ten days to respond. *Id.* On November 11, 2022, the arbitrator issued a final award consisting of the initial award of $5,000 plus $3,121.09 in interest and $36,187 in attorneys' fees. Docket No. 24-2 at 5.

B.  **The Arbitrator's Findings and Awards**

The arbitrator found that the following material facts were not disputed:

> [The hedge fund] entered into the [IAA] with [Choice] on or about July 6, 2016. The [IAA] states that Choice, a Colorado limited liability company, is an investment adviser registered with the State of Colorado. It further states that Choice is duly organized, validly existing and in good standing under the laws of the State of Colorado. At the time of these representations, July 2016, they were accurate. The [IAA], at Paragraph 12,[4] expressly required Choice to promptly notify [the hedge fund] if any of the representations in the [IAA] ceased to be true and correct.

---

[4] Paragraph 12 of the IAA states that Choice "is duly organized, validly existing and in good standing under the laws of the State of Colorado" and provides that Choice "will promptly notify the [hedge fund] if any of the[ ] representations or warranties [listed in Paragraph 12] ceases to be true and correct." Docket No. 24-6 at 4, ¶ 12.

4

> At the time of the [IAA], and still today, the State of Colorado requires investment advisors to supply detailed information about its organization, including the address of its principal office and place of business to the State through the Colorado Investment Adviser Registration Depository ("IARD").[5]  The State also requires registrants to indicate whether they maintained their books and records somewhere other than at their principal place of business.
> On January 30, 2017, Choice's registration as an investment adviser in Colorado terminated.  Choice transferred its principal place of business from Denver to Florida at or about that time.  Thereafter, Choice did not change its registration information with the IARD to reflect the transfer and did not notify Respondents that its registration as an investment adviser in Colorado had terminated.

Docket No. 24-1 at 1-2 (footnotes added).

Based on these findings of fact, the arbitrator found that Choice violated Colo. Rev. Stat. §§ 11-51-403(1) and 11-51-403(2.5) when it failed to timely update the registration information it provided to the IARD to reflect the fact that it had moved its primary place of business to Florida.  *Id.* at 2.  The arbitrator also found that Choice was legally barred from asserting claims based on the IAA under Colo. Rev. Stat. § 11-51-402(10) and that Choice was liable to the hedge fund in the amount of $5,000 pursuant to Colo. Rev. Stat. § 11-51-604.[6]  *Id.* at 2-3.  In addition, the arbitrator found that Paragraph 12 of the IAA "required Choice to notify Respondents promptly if it ceased to be registered as an investment adviser in Colorado" and that Choice breached the contract when it "failed to do so after its registration as an investment adviser in

---

[5] *See* Colo. Rev. Stat. § 11-51-403(2.5).

[6] Colo. Rev. Stat § 11-51-604(2.5) provides that "[a]n investment adviser . . . who violates section 11-51-401 is liable to each person to whom investment advisory services are provided in violation of such section in an amount equal to the greater of one thousand dollars or the value of all the benefits derived directly or indirectly from the relationship or dealings with such person prior to such time as the violation may be cured, together with interest at the statutory rate from the date of receipt of such benefits, costs, and reasonable attorney fees.

Colorado terminated in January 2017." *Id*. Accordingly, the arbitrator dismissed Choice's claims against respondents and found that Choice was liable to the hedge fund in the amount of $5,000 plus interest, costs, and attorney fees.  *Id* at 3.

### C.  The Current Action

Choice initiated this action on November 4, 2022 by filing a petition to vacate the interim arbitration award.  Docket No. 1.  Choice argues that the final arbitration award is in manifest disregard of the law, that the arbitrator committed misconduct by granting respondents' dispositive motion, and that awarding respondents damages and attorneys' fees exceeded the arbitrator's power.  Docket No. 24 at 9-15.  Respondents filed a motion to confirm the final award on January 30, 2023.  Docket No. 16.  Respondents argue that there are no grounds to vacate, modify, or correct the arbitration award and that the Court should therefore confirm the award and enter judgment pursuant to Section 9 of the Federal Arbitration Act ("FAA").  *Id.* at 2; *see* 9 U.S.C. § 9.

## II.  LEGAL STANDARD

Under Section 9 of the FAA, confirmation of an arbitration award is a summary procedure and courts "must grant . . . an order [confirming an arbitration award] unless the award is vacated, modified, or corrected."  9 U.S.C. §  9.  Section 10 of the FAA enumerates four circumstances under which a district court may vacate an arbitration award: (1) the award was procured by corruption, fraud, or undue means; (2) there was evidence that the arbitrators were partial or corrupt; (3) the arbitrators were guilty of misconduct; or (4) the arbitrators exceeded their powers or imperfectly executed them.  9 U.S.C. § 10(a)(1)-(4).  There is also a "handful of judicially created reasons" for which

vacatur is appropriate, including violations of public policy, an arbitrator's manifest disregard of the law, or the denial of a fundamentally fair hearing. *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001) (citation omitted).

When ruling on a motion to vacate an arbitration award, a district court is not to "hear claims of factual or legal error by an arbitrator as if it were an appellate court reviewing a lower court's decision." *Hosier v. Citigroup Global Mkts., Inc.*, 835 F. Supp. 2d 1098, 1101 (D. Colo. 2011) (citation omitted). Instead, courts must "give extreme deference to the determination of the arbitrator" and may only vacate an arbitration award for the reasons enumerated in the FAA or the judicially created reasons listed above. *Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Okla.*, 636 F.3d 562, 567 (10th Cir. 2010) (brackets and citation omitted); *see also Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1182 (10th Cir. 2000) ("[T]he standard of review of arbitral awards is among the narrowest known to law.") (citation omitted).

## III. ANALYSIS

Choice argues that the arbitration award should be vacated because the award is in manifest disregard of the law, the arbitrator is guilty of misconduct under § 10(a)(3), and the arbitrator exceeded his powers under § 10(a)(4). Docket No. 24 at 9-15.

### A. Manifest Disregard of the Law

"An arbitrator's erroneous interpretations or applications of law are not reversible. Only manifest disregard of the law is subject to reversal." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995) (citing *Wilko v. Swan,* 346 U.S. 427, 436-37 (1953)) (quotation marks omitted). "Manifest disregard of the law 'clearly means more than error or misunderstanding with respect to the law,'" *id.* (citation and quotation

7

omitted), such that "[t]he error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2nd Cir. 1986). An arbitrator manifestly disregards the law when he "appreciates the existence of a clearly governing legal principal but decides to ignore or pay no attention to it." *Id.* (citation omitted); *see also Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005) ("we require more than more than error or misunderstanding of the law. A finding of manifest disregard means the record will show the arbitrators knew the law and explicitly disregarded it." (quoting *Bowen v. Amoco Pipeline Co.,* 254 F.3d 925, 932 (10th Cir. 2001)) (alterations and quotation marks omitted). Even under this standard, however, courts may not disturb an arbitration award where there is no evidence of egregious or intentional misconduct by the arbitrator, even if the arbitrator "got the law wrong, and perhaps even *really* wrong." *Abbott v. Law Office of Patrick J. Mulligan*, 440 F. App'x 612, 622 (10th Cir. 2011) (unpublished) (quotation marks and citation omitted).

Choice argues that the arbitration award "is in manifest disregard" of Colorado and Florida securities laws. Docket No. 24 at 9-12. Choice appears to claim that the arbitrator erred in finding that Choice violated Colorado law, arguing that Choice was not required to inform the Colorado securities commissioner of its 2017 move to Florida and that it complied with Florida law.[7] *Id.* at 12. Choice further states that it presented

---

[7] Choice cites an affidavit by former Colorado Securities Commissioner Philip A. Feigin in support of its argument that it did not violate the Colorado Securities Act. Docket No. 24 at 11-12. Because Choice obtained the affidavit after arbitration, Docket No. 24-3 at 1, and therefore it played no part in the arbitrator's ruling, the Court will not consider it. *See Youngs v. American Nutrition, Inc.*, 537 F.3d 1135, 1145 (10th Cir.

these arguments to the arbitrator, but that the arbitrator "ignored the facts and law that Choice presented, and instead adopted the Respondents' false argument."[8]  *Id.* at 10.  Choice does not argue that action by the arbitrator other than his interpretation of Colorado securities law constituted manifest disregard of the law.

Choice's arguments are insufficient to establish that the arbitrator manifestly disregarded the law because Choice has not demonstrated that the arbitrator "knew the law and explicitly disregarded it."  *See Dominion*, 430 F.3d 1275.  At most, Choice has made a showing that the arbitrator adopted an erroneous interpretation of Colorado securities law put forward by respondents rather than Choice's correct interpretation of Colorado law.  An error of this nature is insufficient to justify vacating an arbitration award.  *See Abbott,* 440 F. App'x at 620 ("The [arbitration] panel's possible adoption of a flawed argument is merely error, not manifest disregard of the law."); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) ("It is not enough for petitioners to show that the [arbitration] panel committed an error—or even a serious error.") (citations omitted).

---

2008) (holding that a court may decline to review extrinsic evidence going to the merits of the dispute when ruling on a motion to vacate or a motion to confirm an arbitration award).
   [8] This statement contradicts Choice's argument that "[t]his case is on all fours with" *Dalton*.  Docket No. 24 at 12.  In *Dalton*, the court vacated an arbitration award because the claimant was not provided the opportunity to present evidence going to the factual issues presented by his claim or to have his motion to compel production of documents heard. *Prudential Securities, Inc. v. Dalton,* 929 F. Supp. 1411, 1417 (N.D. Okla. 1996).  Instead, the arbitration panel granted the respondent's motion to dismiss without holding a hearing on the merits.  *Id.*  Thus, *Dalton* is distinguishable because Choice was given the opportunity to present factual and legal arguments opposing respondents' dispositive motion.  *See* Docket No. 24 at 10, 12; Docket No. 24-4.

Moreover, the arbitrator's decision to grant respondents' dispositive motion was not solely based on his conclusion that Choice had violated Colorado securities law. Docket No. 24-1 at 2-3. He also found that Choice materially breached the IAA. *Id.* Accordingly, even if the Court found that the arbitrator's conclusion that Choice violated Colorado securities law was a manifest disregard of the law, that finding would not justify vacating the arbitration award because the arbitrator's decision is independently supported by his finding that Choice breached the IAA, which Choice does not claim manifestly disregarded the law.

### B. Misconduct

Under the FAA, a district court may vacate an arbitration award if the arbitrator is guilty of misconduct. 9 U.S.C. § 10(a)(3).[9] Choice claims that the arbitrator committed misconduct by: (1) ignoring material issues of fact; (2) "deny[ing] all efforts by Choice to obtain discovery from Respondents;" and (3) issuing the interim award before Choice had the opportunity to depose respondents. Docket No. 24 at 12-13.

#### *1. Genuine Issues of Material Fact*

Choice's allegation that the arbitrator "ignored genuine material issues of fact" concerns four of Choice's assertions of fact: (1) that Choice was located in Florida by 2017; (2) that Choice notified respondents of its move to Florida; (3) that the IAA did not include any terms requiring Choice to maintain registration in Colorado; and (4) that, as a result of the move to Florida, Choice was no longer subject to the registration

---

[9] Choice's motion claims that the arbitrator committed misconduct under "Section 10(b)(3)." Docket No. 24 at 12-13. The Court assumes that Choice intended to reference § 10(a)(3), since § 10(b)(3) does not exist.

requirements of the Colorado Securities Act.  *Id.*  These allegations do not warrant vacating the arbitration award.

First, "the Supreme Court has long stated '[t]he courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of [a] contract.'"  *Goldgroup Resources, Inc. v. DynaResource de Mexico, S.A. de C.V.*, 381 F. Supp. 3d 1332, 1346 (D. Colo. 2019) (quoting *United Paperworkers Int'l. Union., AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)); *see also Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997) ("the factual findings of the arbitrator are insulated from judicial review.").  Whether Choice moved to Florida in 2017 relates to the arbitrator's findings of fact concerning Choice's location and is therefore insulated from the Court's review. [10]  *See Goldgroup*, 381 F. Supp. 3d at 1346.  Similarly, whether Choice informed respondents of its move to Florida goes to the arbitrator's factual finding that Choice did not notify respondents.  Choice's argument that the arbitrator ignored that the IAA did not require Choice to maintain registration in Colorado challenges the arbitrator's interpretation of the IAA.  Because an arbitrator's interpretation of a contract is not subject to judicial review, Choice's argument concerning what the IAA requires does not support vacating the arbitration award.  *See id.*

---

[10] The interim award states that "Choice transferred its principal place of business from Denver to Florida" around January 2017.  Docket No. 24-1 at 2.  Accordingly, Choice's claim that "the Interim Award ignores genuine issues of material fact showing that by 2017 Choice was located in Florida," Docket No. 24 at 12, is factually incorrect in addition to being an insufficient basis for vacating the arbitration award.

11

Second, Choice appears to argue that the arbitrator incorrectly concluded that Choice was subject to the registration requirements of the Colorado Securities Act because he ignored a genuine issue of material fact that Choice was located in Florida by 2017. Docket No. 24 at 12. This argument is unavailing because it merely alleges that the arbitrator misapplied the law, which is insufficient to establish misconduct under § 10(a)(3). *See Abbott*, 440 F. App'x at 622 (holding that a petitioner who merely demonstrates that an arbitrator misapplied or misinterpreted the law "provides no basis for a finding of misconduct under § 10 of the FAA"). The argument is rendered further inadequate by the fact that the arbitrator did not ignore facts establishing Choice's move from Colorado to Florida since he explicitly found that Choice transferred its principal place of business from Denver to Florida around January 2017. Docket No. 24-1 at 2. Accordingly, the Court does not find that the arbitrator committed misconduct under § 10 by ignoring genuine issues of material fact.

### 2. Discovery and Deposition

Choice argues that the arbitrator committed misconduct under § 10(a)(3) of the FAA because he granted respondents' dispositive motion before ruling on Choice's motion to compel disclosure[11] and before Choice had completed two scheduled depositions. Docket No. 24 at 13. Choice states that the arbitrator "was specifically

---

[11] Choice's motion states that the "arbitrator also denied all efforts by Choice to obtain discovery from Respondents," Docket No. 24 at 13, but its reply refers to "the documents [respondents] did actually produce." Docket No. 26 at 9. Furthermore, respondents allege that they engaged in discovery with Choice, producing nearly 4,000 pages of documents. Docket No. 25 at 11. Therefore, it appears that the arbitrator did not deny or restrict all discovery.

advised that the requested discovery would impact the briefing on the dispositive motion" and that he "was aware of Choice's attempts to depose the Respondents." *Id.*

Section 10(a)(3) permits a court to set aside an arbitration award if the arbitrator refuses to hear evidence pertinent and material to the controversy.[12] 9 U.S.C. § 10(a)(3). In applying this standard, the Tenth Circuit has held that it will not vacate an award "[e]ven if the arbitrator erroneously excluded material evidence . . . unless the error deprived a party of a fundamentally fair hearing." *Bad Ass Coffee Co. of Hawaii v. Bad Ass Coffee Ltd. Partnership*, 25 F. App'x 738, 743 (10th Cir. 2001) (unpublished). A "fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decision-makers are not infected with bias." *Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., Inc.*, 22 F.3d 1010, 1013 (10th Cir. 1994).

Here, the arbitrator ordered the parties to submit briefing on the issue of whether respondents should be permitted to file a dispositive motion and held a hearing on the matter before granting respondents' request for leave to file a dispositive motion. Docket No. 24-21. In addition, Choice alleges that it "specifically advised" the arbitrator that it anticipated that requested discovery was relevant to the dispositive motion and that the arbitrator was made aware of the scheduled deposition. Docket No. 24 at 13. Such ample opportunity to present arguments and evidence before the arbitrator does not support a finding that Choice was deprived of a fundamentally fair hearing. *Cf.*

---

[12] Choice does not explain how these actions constitute a violation of § 10, but because they concern the arbitrator's decision to grant the dispositive motion without considering the motion to compel or the deposition testimony, it appears that Choice is arguing that the arbitrator refused to hear evidence pertinent to the controversy. *See* Docket No. 24 at 13; 9 U.S.C. § 10(a)(3).

*Dalton*, 929 F. Supp. at 1417-18 (finding that petitioner was denied a fundamentally fair hearing when the arbitration panel granted respondent's motion to dismiss without allowing petitioner to present factual evidence at a hearing relative to the factual issues presented by his claim). Therefore, the Court finds that the arbitrator did not commit misconduct under § 10(a)(3).

### C. Damages and Attorneys' Fees

The Supreme Court has held that an award may be vacated pursuant to 9 U.S.C. § 10(a)(4) "[o]nly if 'the arbitrator acts outside the scope of his contractually delegated authority.'" *Oxford Health Plans LLC v. Sutter,* 569 U.S. 564, 569 (2013) (finding that, where the parties' arbitration agreement granted the arbitrator the power to construe their contract, he would have exceeded his authority only if he did not arguably interpret the contract) (quoting *Eastern Associated Coal Corp. v. Mine Workers,* 531 U.S. 57, 62 (2000)) (alterations omitted); *see also Stolt-Nielsen*, 559 U.S. at 672-77 (holding that an arbitration panel tasked with determining whether an arbitration agreement permitted class arbitration exceeded its authority when it "simply impose[d] its own view of sound policy regarding class arbitration" rather than identifying and applying the rule of law governing the interpretation of the agreement). "A party seeking relief under this provision bears the heavy burden of demonstrating that the arbitrator's award 'simply reflects his own notions of economic justice.'" *Goldgroup Resources, Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1190 (10th Cir. 2021) (quoting *Sutter*, 569 U.S. at 569).

Choice argues that the arbitrator exceeded his authority by awarding respondents damages of $5,000 plus interest and attorneys' fees. Docket No. 24 at 14-

14

15.  The IAA provides that "[a]ny claim, dispute, or controversy arising out of or relating to (a) the Account; (b) any transaction executed by, through, or with [Choice]; (c) [the IAA] or any other agreement with [Choice]; or (d) any other matter between [the hedge fund] and [Choice] shall be finally and exclusively resolved by arbitration . . . conducted pursuant to the Commercial Arbitration Rules of the American Arbitration Association." Docket No. 24-6 at 4, ¶ 13.  Accordingly, Choice may seek to vacate the award under 9 U.S.C. § 10(a)(4) only if it demonstrates that the award of damages of $5,000 plus interest and attorneys' fees "simply reflects [the arbitrator's] own notions of economic justice" rather than constituting an exercise of his contractually delegated authority.  *See Sutter*, 569 U.S. at 569 (alterations omitted).

### *1.  Damages*

Choice argues that respondents were not permitted to seek the return of respondents' initial $5,000 payment to Choice because respondents did not assert a counterclaim in their arbitration pleadings or timely pay a counterclaim fee to the AAA. Docket No. 24 at 14.  Choice raised these arguments twice before the arbitrator, *compare* Docket No. 24 at 14 *with* Docket No. 24-4 at 8 *and* Docket No. 24-23 at 1-3, but the arbitrator evidently found them unpersuasive since he awarded respondents the $5,000 in damages.  Docket No. 24-1 at 3; Docket No. 24-2 at 2.  Accordingly, Choice's motion appears to argue that the arbitrator exceeded his authority by awarding respondents $5,000 despite Choice's objection that respondents failed to follow the procedure for filing counterclaims under the AAA Commercial Arbitration Rules.

The Supreme Court has held that "'procedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an

15

arbitrator to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002) (emphasis in original) (holding that the application of a time-limit rule found in the National Association of Securities Dealers Code of Arbitration Procedure "is a matter presumptively for the arbitrator."). After all, agreeing to arbitration allows parties to "trade[ ] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Accordingly, "[a] mere procedural irregularity provides no basis upon which to conclude that the [Arbitration] Board acted beyond its authority" and thus does not constitute a basis for vacatur under § 10(a)(4). *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 744-45 (9th Cir. 1985).

Choice's argument that the respondents should not have been awarded damages because of their alleged failure to bring a formal counterclaim or pay a fee required by the AAA Commercial Arbitration Rules alleges only a "procedural irregularity." Therefore, it is an issue presumptively for the arbitrator, not the Court, to decide. *See Howsam*, 537 U.S. at 84-85. The arbitrator did so, having twice been presented with Choice's argument on the matter. Docket No. 24-1 at 3; Docket No. 24-2 at 2; Docket No. 24-4 at 8; Docket No. 24-23 at 1-3. Accordingly, the Court will not vacate the award under § 10(a)(4) on the basis of the arbitrator's decision on this procedural matter.

### 2. Attorneys' Fees

The final arbitration award granted respondents attorneys' fees on the basis that, "[e]ven though their Agreement contains no provision authorizing an award of attorney

fees to the prevailing parties, both sides have maintained consistently in this arbitration that they are entitled to recover their attorney fees." Docket No. 24-2 at 2.  The arbitrator rejected Choice's argument that an award of attorneys' fees would be "misguided" and found that the AAA Commercial Arbitration Rules authorized the award since the rules state that "[t]he award of the arbitrator(s) may include . . . an award of attorneys' fees if all parties have requested such an award." *Id.* at 2-3 (quoting AAA Commercial Arbitration Rules, Rule R-47(d)(ii)).[13]  The arbitrator found that "[b]oth [parties] included attorney fee claims in their initial pleadings" and that they "repeated these claims at the Preliminary Hearing on June 3, 2022." *Id.* at 2.  In addition, the arbitrator noted that Choice's response to respondents' dispositive motion stated, "Choice agrees that it is entitled to an award of attorney fees and costs under Rule 49(d)(ii)[14] when it prevails at the hearing in this matter." *Id.* (quoting Docket No. 24-4 at 8).

Choice argues that the arbitrator exceeded his powers by awarding attorneys' fees because "[t]here is no provision anywhere in the IAA, or in any statute that permits the arbitrator to award attorneys' fees." Docket No. 24 at 14.  Choice claims that "[c]ases addressing Rule 47 uniformly reject the contention that Respondents should be awarded attorneys' fees under AAA [R]ule 47." *Id.* at 15.  However, the cases that Choice cites do not support its argument that the arbitrator exceeded his powers.[15]  *See*

---

[13] The final arbitration award cites AAA Rule 49, but the quoted text is from Rule 47.  Docket No. 24-2 at 2-3; AAA Commercial Arbitration Rules, Rule R-47(d)(ii).  The Court assumes that the award intended to reference Rule 47.

[14] The Court presumes that Choice intended to reference Rule 47(d)(ii) since there is no rule 49(d)(ii).  *See* AAA Commercial Arbitration Rules, R-49.

[15] Choice cited these cases in its opposition to respondents' dispositive motion calculation of costs filed before the arbitrator.  Docket No. 24-22 at 4.  The arbitrator

*Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1106-07 (Cal. Ct. App. 2021) (holding that defendant could not rely on the provision of the AAA Commercial Arbitration Rules authorizing an arbitrator to award attorneys' fees mandated by statute to avoid a finding that a contract provision waiving the right to attorneys' fees was unconscionable); *News+Media Cap. Grp., LLC v. Las Vegas Sun, Inc.*, 495 P.3d 108, 113, 117 n.8 (Nev. 2021) (declining to vacate an arbitrator's decision not to award attorneys' fees although the parties expressly requested them and holding that the use of "may" in the AAA's Commercial Arbitration Rules permitted, but did not require, an arbitrator to award attorneys' fees). In addition, Choice characterizes the parties' requests for attorneys' fees as "boilerplate requests," but does not explain why it would exceed the arbitrator's powers to award attorneys' fees under AAA Rule 47(d)(ii) based on boilerplate requests. Docket No. 24 at 14. Because Choice has failed to demonstrate that the arbitrator's finding that respondents are entitled to attorneys' fees under AAA Rule 47(d)(ii) exceeded his powers, the Court declines to vacate the award on the basis of 9 U.S.C. § 10(a)(4).

For the reasons detailed above, the Court will deny Choice's motion to vacate the arbitration award.

### D. Motion to Confirm Final Arbitration Award

Respondents ask the Court to confirm the arbitration award in accordance with 9 U.S.C. § 9. Docket No. 16 at 2. If a party seeks confirmation of an arbitration award

---

discussed the cases in the final award, concluding that they did not preclude the award of attorneys' fees. Docket No. 24-2 at 3. Even if the cases were on point, Choice's reliance on them appears to be an attempt to relitigate an issue already decided by the arbitrator, which courts are discouraged from entertaining, as discussed above. *See United Steelworkers of America*, 363 U.S. at 599.

within one year after the award is made, the statute requires a court to "grant . . . an order [confirming an arbitration award] unless the award is vacated, modified, or corrected." 9 U.S.C. § 9.  The final arbitration award was made on November 11, 2022.  Docket No. 24-2 at 5.  Respondents timely filed their motion to confirm the arbitration award on January 30, 2023.  Docket No. 16.  As described above, the Court finds that there are no grounds to vacate, modify, or correct the award.  Therefore, the Court will grant respondents' motion.

V. CONCLUSION

Therefore, it is

**ORDERED** that petitioner's Motion to Vacate Arbitration Award [Docket No. 24] is **DENIED**.  It is further

**ORDERED** that the Petition to Vacate Arbitration Award [Docket No. 1], Amended Petition to Vacate Arbitration Award [Docket No. 5], and Second Amended Petition to Vacate Arbitration Award [Docket No. 8] are **DENIED**.  It is further

**ORDERED** that respondents' Motion to Confirm Final Arbitration Award [Docket No. 16] is **GRANTED**.  It is further

**ORDERED** that the award of Arbitrator David Driscoll, executed on November 11, 2022, is **CONFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED September 18, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge